## RAGAN v. COUNTY OF ALAMANCE

[98 N.C. App. 636 (1990)]

EUNICE HARMON RAGAN AND TERRY WALL, FOR THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, JANET BUTLER, FOR HERSELF AND ALL OTHERS SIMILARLY SITUATED, AND DONNELL S. KELLY, FOR HIMSELF AND ALL OTHERS SIMILARLY SITUATED V. THE COUNTY OF ALAMANCE, THE BOARD OF COMMISSIONERS FOR THE COUNTY OF ALAMANCE, AND W. B. TEAGUE, JR., JOSEPH P. BARBOUR, T. FRANK BENNETT, CARY D. ALLRED, AND LARRY W. SHARPE, ALL DULY ELECTED AND ACTING COMMISSIONERS OF AND FOR ALAMANCE COUNTY

No. 8915SC974

(Filed 5 June 1990)

1. **Counties § 9 (NCI3d)— mandamus to compel courthouse improvements — sovereign immunity**

   The Court of Appeals declined the county's invitation to expand the doctrine of sovereign immunity in a case in which plaintiffs sought a writ of mandamus to compel improvements in the Alamance County Courthouse. There is no precedent in which a county in North Carolina has sought to use the sovereign immunity doctrine as a shield from mandamus, and the modern tendency is to restrict rather than to extend the perimeters of governmental immunity.

   **Am Jur 2d, Mandamus §§ 129, 220, 228.**

2. **Mandamus § 2 (NCI3d)— action to compel courthouse improvements — discretionary function — mandamus not appropriate**

   A petition for a writ of mandamus to compel improvements to the Alamance County Courthouse was remanded with instructions that the complaint be dismissed because mandamus lies only to compel the performance of a specific act required by statute. N.C.G.S. § 7A-302 directs only that a county provide courtrooms, but the kind of courthouse needed is a discretionary matter vested in the Commissioners. Although plaintiffs contended that the inadequate courthouse deprived them of constitutionally-protected guarantees and statutory rights, none of the constitutional provisions or statutes asserted by plaintiffs specify the specific way nor the prescribed extent by which those provisions might be satisfied. There are no ministerial functions at issue here that the trial judge could order the Commissioners to fulfill.

   **Am Jur 2d, Mandamus §§ 129, 220, 228.**

RAGAN v. COUNTY OF ALAMANCE

[98 N.C. App. 636 (1990)]

APPEAL by defendants from order entered 20 July 1989 in ALAMANCE County Superior Court by *Judge J. Milton Read, Jr.* Heard in the Court of Appeals 14 March 1990.

*Latham, Wood, Eagles, and Hawkins, by James F. Latham, B.F. Wood, and William A. Eagles, for plaintiff-appellees.*

*Alamance County Attorney S.C. Kitchen, and Human Resources Attorney Carol Vincent Miller, for defendant-appellants.*

DUNCAN, Judge.

Plaintiffs seek a writ of mandamus ordering defendants to make certain improvements to the Alamance County Courthouse. Defendants appealed after the trial judge denied their motion to dismiss this action. Because we hold that mandamus may not issue in this case, we vacate and remand with instructions that the judge enter an order dismissing the Complaint.

I

Plaintiffs, representing a class of people similarly situated, allege that the Courthouse in Alamance County is, in multiple respects, inadequate. Plaintiffs Eunice Ragan and Terry Wall are paraplegics who rely upon wheelchair transportation; they charge that the absence of ramps and elevators in the Courthouse deprives them of access to the Office of the Clerk of Superior Court, to the Small Claims Court, and to the Superior Court. Plaintiff Janet Butler has served as a foreperson of the grand jury; among other things, she alleges that the grand jury must deliberate in a converted coal bin in the basement of the Courthouse and that the jury's deliberations can be heard in the public hallways. Plaintiff Donnell S. Kelly is a practicing attorney who appears regularly in the civil and criminal courts; he alleges, in part, that there are no areas in the Courthouse nor in the Courthouse Annex that allow for confidential communications between lawyers and their clients. Each of these plaintiffs, moreover, is a taxpayer in Alamance County.

Plaintiffs petitioned the trial judge for a writ of mandamus to issue against defendants, the County of Alamance, its Board of Commissioners, and the Board's members. Defendants moved to dismiss the Complaint on jurisdictional grounds. The judge's denial of defendants' motion is the subject of this appeal.

## II

Defendants argue that the trial court cannot exercise personal jurisdiction in this action because 1) the Board of Commissioners and its members are not the real parties in interest because N.C. Gen. Stat. § 153A-11 (1987) requires that suits be brought against a county in the county's name only, and 2) because Alamance County enjoys immunity from suit. Plaintiffs contend that defendants' appeal from a denial of a motion to dismiss is interlocutory and that defendants have attempted to " 'boot-strap' their way into this Court by denominating this argument as one of 'personal jurisdiction.' "

[1] We do not address, in its substance, the real-party-in-interest argument brought forward by the Board and the individual Commissioners. In our view, both arguments defendants make on appeal are, in essence, directed at whether the County may assert sovereign immunity. The Commissioners, named here in their representative capacities, would be protected by the County's immunity were the latter able to invoke it. *See Baucom's Nursery Co. v. Mecklenburg County*, 89 N.C. App. 542, 544, 366 S.E.2d 558, 560, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 274 (1988). Alternatively, if mandamus may ultimately issue in this case, defendants concede that the writ would be directed to the Commissioners, their status as real parties in interest during the trial phase of this case notwithstanding. We focus our discussion, then, on the sovereign-immunity ground advanced by the County.

These plaintiffs are not the first to seek mandamus to compel a county to improve its court facilities. In *Ward v. Comm'rs*, our Supreme Court said that the writ "will not lie to compel . . . county commissioners to repair or build a courthouse." 146 N.C. 534, 535, 60 S.E. 418, 418 (1908). *Ward* was preceded by *Vaughn v. Comm'rs*, in which the Court said it had "no authority vested in the commissioners of determining what kind of a courthouse is needed or what would be a reasonable limit to the cost." 117 N.C. 432, 434, 23 S.E. 354, 355 (1895). *Vaughn* and *Ward* have been followed in subsequent cases in this State. *See State v. Leeper*, 146 N.C. 655, 61 S.E. 585 (1908); *Burgin v. Smith*, 151 N.C. 561, 66 S.E. 607 (1909). However, we find no case turning on the jurisdictional arguments defendants advance here. Rather, as the *Ward* Court explained, our courts will not issue the writ when the relief sought is directed at a discretionary function: "[B]uilding a new

courthouse or repairing an old one is not a mere ministerial matter, admitting of no debate, but is one of discretion, committed to the county commissioners, in regard to which their judgment and discretion must prevail, and not the opinion of a judge." 146 N.C. at 536, 60 S.E. at 418.

The County's novel resort to the sovereign-immunity doctrine is, perhaps, as plaintiffs assert, calculated to permit an immediate appeal from the denial of defendants' motion to dismiss. *See Zimmer v. N.C. Dept. of Transp.*, 87 N.C. App. 132, 134, 360 S.E.2d 115, 116-17 (1987) (in which Court of Appeals adhered to cases holding that sovereign immunity presents question of personal jurisdiction). However, we decline the County's invitation to follow its line of analysis because its reasoning is broader than the case law supports.

Following defendants' arguments, § 153A-11 requires that only a county be named when mandamus is sought in a county matter. The county, in turn, may then defeat jurisdiction by invoking the sovereign-immunity doctrine. Defendants' analysis would leave our courts powerless to compel government officials to perform their ministerial duties, as we discuss next. Such a result is clearly not correct. We need not construe § 153A-11 nor the concept of sovereign immunity in the manner defendants assert, as our traditional refusal to act when mandamus is sought in discretionary matters rests on a firmer ground.

Mandamus, like the mandatory injunction, uses the *in personam* contempt power of the court to coerce an individual public officer to perform a plain duty. *Orange County v. N.C. Dept. of Transp.*, 46 N.C. App. 350, 384-85, 265 S.E.2d 890, 912, *disc. review denied*, 301 N.C. 94 (1980). The power of our courts to issue such orders is bestowed by Article IV, § 1 of the North Carolina Constitution. *Id.* at 385, 265 S.E.2d at 913. A county is required by statute to provide "courtrooms and related judicial facilities" for its citizens, N.C. Gen. Stat. § 7A-302 (1989), and it is within the province of the courts to determine what are necessary public buildings. *Hightower v. City of Raleigh*, 150 N.C. 569, 571, 65 S.E. 279, 281 (1909). It is within the authority of our courts, therefore, to command a county's officials to fulfill the ministerial, nondiscretionary public duty mandated by § 7A-302. *See Orange County*, 46 N.C. App. at 385, 265 S.E.2d at 913; *Burgin*, 151 N.C. at 566, 66 S.E. at 610.

We find, moreover, no precedent in which a county in this State has sought to use the sovereign-immunity doctrine as a shield from mandamus. Typically, a county asserts immunity in the tort context, the context, indeed, in which the doctrine first entered our jurisprudence. *See Moffit v. City of Asheville*, 103 N.C. 237, 9 S.E. 695 (1889). In addition, the "modern tendency" is to restrict rather than to extend the perimeters of governmental immunity, *see Koontz v. City of Winston-Salem*, 280 N.C. 513, 529, 186 S.E.2d 897, 908, *reh'g denied*, 281 N.C. 516 (1972), and we decline the County's invitation to so expand the doctrine in this case.

Although we are not convinced by the jurisdictional arguments presented by defendants, the authority they cite offers clear authority governing the ultimate resolution of this case. In the interest of judicial economy — because, in our view, defendants must inevitably prevail in this case — we will treat this appeal as a petition for certiorari to determine whether mandamus may issue. N.C. Gen. Stat. § 7A-32(c) (1989); *see Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 288-89, 266 S.E.2d 812, 814 (1980).

### III

[2] As we noted above, a county is required by statute to furnish courtrooms and related judicial facilities for its citizens, § 7A-302, and our courts have the authority to determine what are necessary public buildings and what classes of expenditures by a county are necessary ones. *See Vaughn*, 117 N.C. at 434, 23 S.E. at 355. The judicial power, however, does not extend towards determining such matters as the kind of courthouse that is needed nor the reasonable limits of its cost. *Id.; see also Burgin*, 151 N.C. at 567-68, 66 S.E. at 610. Rather, mandamus lies only to compel the performance of a specific act required by statute. *Ward*, 146 N.C. at 538, 60 S.E. at 419. Mandamus would lie, therefore, to command a county to provide court facilities as directed by § 7A-302. "[W]hat kind of a courthouse is needed," however, is a discretionary matter vested in the commissioners. *Vaughn*, 117 N.C. at 434, 23 S.E. at 355.

As the Court said in *Ward*, courts cannot compel officials "to do any specific act *not required by statute to be done in a specific way or to a prescribed extent*." 146 N.C. at 536, 60 S.E. at 418-19 (emphasis added). Although *Vaughn*, *Ward*, and *Burgin* did not address themselves to the statute at issue here, § 7A-302 directs only that a county "provide" courtrooms; we think the type of court facilities provided remains a matter of discretion with the

county officials. The reasoning of the prior courthouse decisions is thus applicable here. *See* Mallard, *Inherent Power of the Courts of North Carolina*, 10 Wake Forest L. Rev. 1, 18-20 (1974).

Plaintiffs assert that the prior decisions of our Supreme Court are inapposite because plaintiffs allege that the inadequate Courthouse has deprived them of constitutionally-protected guarantees and statutory rights. They make these contentions: 1) that N.C. Const. Art. I, §§ 18, 19, 24 and 25 of the North Carolina Constitution command that every person have access to the courts, equal protection of the laws, and the right to jury trials in civil and criminal matters; 2) that N.C. Gen. Stat. § 168-2 (1987) provides handicapped persons with the same right of access and use of public places as the law provides the able-bodied, and N.C. Gen. Stat. § 168A-7 (1987) states that it is discriminatory for a department of State "to refuse to provide reasonable aids and adaptations necessary for a known qualified handicapped person to use or benefit from existing public services operated by such entity . . ."; 3) and that N.C. Gen. Stat. § 15A-623(e) (1988) requires that all grand jury proceedings be in secret, except as the law otherwise provides.

As sympathetic as plaintiffs' allegations may be, a mandamus in this case would necessarily intrude upon the discretionary powers of the Commissioners. Would the trial judge, for example, command that the grand jury room be soundproofed, or would he order that a guard be posted in the hallway whenever the jury met? None of the constitutional provisions nor statutes asserted by plaintiffs specify the "specific way" nor the "prescribed extent" by which those provisions might be satisfied. There are not, in short, mere ministerial functions at issue here that the trial judge could order the Commissioners to fulfill. Plaintiffs, rather, ask the courts to enter into an area in which we have historically declined to intervene. We adhere, therefore, to our precedents and hold that mandamus may not issue in this case. In so holding, we express no opinion as to whether other avenues might be available for these plaintiffs to pursue.

IV

Holding that mandamus is not available as a remedy for plaintiffs, the order of the trial judge is vacated, and the case is remanded with instructions that the Complaint be dismissed.

Vacated and remanded.

Judges ARNOLD and LEWIS concur.