SUE A. MINNEMAN, D.D.S., PLAINTIFF v. JAMES G. MARTIN, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NORTH CAROLINA, DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NORTH CAROLINA, DAVID T. FLAHERTY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NORTH CAROLINA, DON TAYLOR, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DIVISION OF MENTAL HEALTH, MENTAL RETARDATION, SUBSTANCE ABUSE SERVICES OF THE STATE OF NORTH CAROLINA, DR. WALTER W. STELLE, PH.D., IN HIS OFFICIAL CAPACITY AS DEPUTY DIREC-TOR OF THE DIVISION OF MENTAL HEALTH, MENTAL RETARDATION, SUBSTANCE ABUSE SERVICES OF THE STATE OF NORTH CAROLINA, B. GENE BARRETT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF JOHN UMSTEAD HOSPITAL, DR. P. J. IRIGARAY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CLINICAL DIRECTOR, JOHN UMSTEAD HOSPITAL, DEFENDANTS

No. 9310SC291

(Filed 3 May 1994)

**State § 19 (NCI4th)— whistleblower action—no wrongdoing by defendants—summary judgment on grounds of sovereign immunity appropriate**

The trial court in plaintiff's whistleblower action erred in denying summary judgment on the basis of sovereign immunity as to defendant governor, defendant Secretary of the Department of Human Resources, defendant Director of the Division of Mental Health, Mental Retardation, Substance Abuse Services, and defendant Deputy Director where it was clear that these defendants had no part in the alleged whistleblower violations. N.C.G.S. §§ 126-85, 126-86.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 70; States, Territories, and Dependencies §§ 104-107.**

Appeal by defendants from order entered 2 December 1992 by Judge Wiley F. Bowen in Wake County Superior Court. Heard in the Court of Appeals 13 January 1994.

Plaintiff brought this action pursuant to N.C. Gen. Stat. § 126-84 *et. seq.* (1993), entitled "Protection for Reporting Improper Government Activities" (hereinafter "Whistleblower Act"). In her complaint, plaintiff challenged her nonselection as a Dentist III. She alleged discriminatory action, stemming from her involvement in the North Carolina State Board of Dental Examiners' (NCSBDE) investigation of Dr. Glenn Woodlief, her immediate supervisor.

Plaintiff began working at John Umstead Hospital (JUH), a facility operated by the Department of Human Resources (DHR)

to serve the mentally and emotionally ill, in 1985 as a Dentist I. Within two years, she was promoted to a Dentist II. Beginning in March of 1987 and ending in February 1988, she met approximately four times with defendant Irigaray, Dr. Woodlief's supervisor, to discuss concerns she had about Dr. Woodlief's treatment of patients. These concerns included what she considered inhumane use of restraints and treatment below the standard of care. Plaintiff alleged that defendant Irigaray never responded to her concerns.

Plaintiff further alleged that in late February 1988, two patient advocates questioned her about Dr. Woodlief's treatment of patients. In March 1988, a patient advocate and an investigator for the NCSBDE questioned her further. Plaintiff provided them with an affidavit detailing her observations of Dr. Woodlief's mistreatment of patients and a complaint was filed against Dr. Woodlief with the NCSBDE in April 1988. Despite expectations of confidentiality, plaintiff's affidavit was provided to both Dr. Woodlief and defendant Irigaray. It was also given to the Internal Peer Review members of the Medical Staff Executive Committee, who questioned her at length about her role in the investigation and commented on her lack of loyalty due to her "whistle-blowing". Over time, plaintiff allegedly experienced general intimidation because of her role in the NCSBDE investigation. In September 1989, the NCSBDE suspended Dr. Woodlief's license.

Plaintiff informally filled Dr. Woodlief's position, Director of Dental Services, since his first leave of absence in 1988. In fall of 1989, JUH advertised for the position. Plaintiff applied for the position and three applicants, including plaintiff, were seriously considered for the job. Plaintiff alleged that, during an interview for the position conducted by defendants Irigaray and Barrett, they questioned her at length about her "whistle-blowing" and sought assurances that she would work within the institutional setting. Plaintiff was not selected, and the job was ultimately offered to and accepted by another dentist. Plaintiff alleged that the dentist chosen was given the job despite evidence of misappropriation of state funds and alleged neglect of patients at another state hospital.

Plaintiff complained that her nonselection was discriminatory, in retaliation for her earlier participation in the NCSBDE investigation, and sought damages as well as injunctive relief. Defendants moved for summary judgment on the basis, among others, of sovereign immunity. The trial court denied their motion. From this denial, defendants appeal.

MINNEMAN v. MARTIN

[114 N.C. App. 616 (1994)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General David Roy Blackwell and Assistant Attorney General Victoria L. Voight, for the defendant appellants.*

*Young, Moore, Henderson & Alvis, P.A., by Brian E. Clemmons and M. Lee Cheney, for the plaintiff appellee.*

ARNOLD, Chief Judge.

Defendants first argue the trial court erred in failing to grant summary judgment for defendants Martin, Flaherty, Taylor, Stelle, and Barrett, all of whom were sued in their official capacity, on the basis of sovereign immunity.

In general, denial of a motion for summary judgment is interlocutory and not immediately appealable. *EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resources*, 108 N.C. App. 24, 422 S.E.2d 338 (1992). Despite this general rule, where sovereign immunity is raised as a defense, "a substantial right is affected and the denial is immediately appealable." *Id.* at 27, 422 S.E.2d at 340.

Sovereign immunity protects the State and its agents from suit, *Slade v. Vernon*, 110 N.C. App. 422, 429 S.E.2d 744 (1993), and the General Assembly determines "when and under what circumstances the State may be sued." *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 173, 118 S.E.2d 792, 795 (1961). Sovereign immunity applies not only when the State is a named defendant but also when its agencies, departments, and institutions are named defendants. *Jones v. Pitt County Mem. Hospital*, 104 N.C. App. 613, 410 S.E.2d 513 (1991). Waiver will not be inferred lightly, and statutes waiving immunity will be strictly construed. *Id.*

In *Harwood v. Johnson*, our Supreme Court stated that "[a] suit against defendants in their official capacities, as public officials or a public employee . . . is a suit against the State." *Harwood v. Johnson*, 326 N.C. 231, 238, 388 S.E.2d 439, 443, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 90 (1990). Where immunity has not been waived, through consent or statutory waiver, these officials may not be sued in their official capacities. *Id.* Conversely, where sovereign immunity does not stand as a bar to suit, such defendants may be sued in their official capacities.

The policy of the Whistleblower Act, as it pertains to this case, is to encourage State employees to "report . . . evidence of activity by a State agency or State employee constituting

MINNEMAN v. MARTIN

[114 N.C. App. 616 (1994)]

. . . (4) Substantial and specific danger to the public health and safety." N.C. Gen. Stat. § 126-84 (1993). It prohibits discrimination by the "head of any State department, agency or institution or other State employee exercising supervisory authority" after an employee reports activities described in G.S. § 126-84 and allows an employee to "maintain an action . . . against the *person or agency* who committed the violation." N.C. Gen. Stat. §§ 126-85, to -86 (1993) (emphasis added). The Act goes beyond merely allowing suit, however, and provides various remedies for the injured employee, including injunctive relief, damages, attorney's fees, and, in some cases, treble damages. N.C. Gen. Stat. § 126-87 (1993).

The Whistleblower Act, in providing for specific remedies, represents a clear statutory waiver of sovereign immunity to redress violations of the nature proscribed in G.S. § 126-85. The question, then, becomes one of scope. Defendants contend that suit may be maintained under the statute solely against defendant DHR, the responsible agency, and defendant Irigaray, the responsible person. They argue that defendants Martin, Flaherty, Taylor, Stelle, and Barrett are protected by sovereign immunity because there is no showing that any of the above named defendants "retaliated" against plaintiff. Plaintiff, in fact, concedes that four defendants— Martin, Flaherty, Taylor, and Stelle—did not discriminate against her. She argues, however, that their inclusion is necessary and permissible solely to effectuate any equitable relief awarded by the courts. Contrary to plaintiff's assertions, however, her complaint reveals that, in addition to the injunctive relief mentioned on appeal, she also seeks compensatory and treble damages from *all* defendants in their official capacities.

We will first address plaintiff's claims for compensatory and treble damages. In *Hare v. Butler*, this Court upheld the dismissal of a negligence claim against Mecklenburg County, the county DSS, and DSS personnel sued in their official capacity. *Hare v. Butler*, 99 N.C. App. 693, 394 S.E.2d 231, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990). While that decision was based in part on the complainant's failure to allege the purchase of liability insurance, this Court also noted that the complainant failed to allege negligence on the part of Mecklenburg County and three social workers. *Id.* Here, although plaintiff's complaint contains allegations of Whistleblower violations, plaintiff's concessions make it clear that defendants Martin, Flaherty, Taylor, and Stelle have committed no violations of the Whistleblower Act. Thus, the trial

court should have granted summary judgment on these claims. We note, however, that the trial court properly denied summary judgment as to defendant Barrett since a factual question exists as to whether he committed Whistleblower violations.

Turning to plaintiff's equitable claim, she urgently contends that defendants are subject to suit in their official capacities solely to ensure the enforcement of any prospective equitable relief granted by the courts. She further contends that this Court must use the reasoning employed in *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. ---, 121 L. Ed. 2d 431 (1992), a case involving a 42 U.S.C. § 1983 claim. That case states that "official-capacity actions for prospective relief are not treated as actions against the State" and public officials are not protected by immunity. *Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 283 (1992) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45 (1989)). We disagree with plaintiff's contention and choose to rely on *Corum* for a different reason.

The plaintiff in *Corum* sought equitable relief against ASU, UNC, President Spangler, and Chancellor Thomas in their official capacities. While the Court held that sovereign immunity did not bar the pursuit of equitable remedies under § 1983, the *Corum* Court also held that plaintiff failed to forecast evidence of wrongdoing by ASU, UNC, President Spangler, or Chancellor Thomas, and that summary judgment should have been entered for those defendants. Though not directly on point, we believe *Corum* is instructive because, here, as in *Corum*, plaintiff presented no evidence of wrongdoing on the part of defendants Martin, Flaherty, Taylor, and Stelle. We conclude that the trial court erred in denying summary judgment as to defendants Martin, Flaherty, Taylor, and Stelle, none of whom had any part in the alleged Whistleblower violations. Plaintiff has presented sufficient evidence, however, to withstand a motion for summary judgment as to defendant Barrett.

In conclusion, the trial court's denial of summary judgment on the basis of sovereign immunity is reversed as to defendants Martin, Flaherty, Taylor, and Stelle, and affirmed as to defendants Barrett and Irigaray. Moreover, in accord with our earlier rulings on the parties' motions, the rest of this appeal is dismissed as interlocutory.

DEVEREAUX PROPERTIES, INC. v. BBM&W, INC.

[114 N.C. App. 621 (1994)]

Reversed in part, affirmed in part.

Judges WYNN and MARTIN concur.